IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARGARET COBB                )
                             )
        Plaintiff,           )
                             )
        v.                   )        1:07CV253
                             )
MICHAEL J. ASTRUE,           )
COMMISSIONER OF              )
SOCIAL SECURITY              )
                             )
        Defendant.           )

**<u>MEMORANDUM OPINION AND ORDER</u>**

OSTEEN, JR., District Judge

Presently before the court is Plaintiff Margaret U. Cobb's action under § 205(g) of the Social Security Act to review the final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits. The parties have filed cross-motions for judgment on the pleadings (Docs. 10, 11), and the administrative record has been certified to the court to review. On May 29, 2008, the United States Magistrate Judge issued a Memorandum Opinion and Recommendation, recommending to this court that the Commissioner's decision finding no disability be affirmed. (Doc. 13.) Plaintiff filed timely Objections to the Recommended Ruling. (Doc. 18.)

The court has made a _de novo_ determination, and the conclusion of the Magistrate Judge will be adopted. However, this court writes separately to specifically address the objections raised by Plaintiff. For the reasons set forth by the Magistrate Judge and expressly adopted herein, and for the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings (Doc. 10) will be denied, Defendant's Motion for Judgment on the Pleadings (Doc. 11) will be granted, the Commissioner's finding of no disability will be affirmed, and this action will be dismissed with prejudice.

## I. Background

On July 5, 2000, Plaintiff Margaret Cobb filed an application for disability insurance benefits, alleging disability beginning May 31, 1999. Her claim was heard by an administrative law judge ("ALJ") in February 2002, and was initially denied in a March 19, 2002 decision. On August 2, 2002, the Appeals Council granted a request for review, vacated the hearing decision, and remanded the case. A supplemental hearing was held, and an ALJ found on February 25, 2003 that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, and Plaintiff filed a civil action in federal court on May 23, 2003. A consent order was issued on March 18, 2004, reversing the Commissioner's decision

and remanding the case for further proceedings.  The order
provided, in pertinent part:

> On remand to the Commissioner, the Administrative Law
> Judge will: (1) update the medical evidence, specifically
> securing additional evidence concerning Plaintiff's
> mental impairments, including obtaining a consultive
> examination or medical expert evidence if necessary, Dr.
> Stephenson's treatment notes by subpoena if necessary,
> and if available, evidence pertaining to Plaintiff's Fall
> 2000 psychiatric hospitalization; (2) re-evaluate the
> opinion of Dr. Stephenson in light of additional medical
> evidence and explain the weight afforded Dr. Stephenson's
> opinion with citation to specific evidence of record that
> supports the ALJ's conclusion . . . .

(Consent Order (Doc. 17), Cobb v. Barnhart, 1:03CV790 (M.D.N.C.
Mar. 18, 2004).)

On April 7, 2004, the Appeals Council vacated the final
decision of the Commissioner and remanded the case for further
proceedings.  A third hearing was held on December 13, 2005.  The
ALJ issued a decision denying benefits on April 25, 2006.  The
Appeals Council denied Plaintiff's request for review, and
Plaintiff brought a civil case in United States District Court
for the Middle District of North Carolina.  The United States
Magistrate Judge issued a Memorandum Opinion and Recommendation
(hereinafter "M&R") on May 28, 2008 (Doc. 13), recommending that
this court affirm the ALJ decision and grant Defendant's motion
for judgment on the pleadings.  Plaintiff filed timely
objections.  (Doc. 18.)

## II. Legal Standard

The Federal Magistrate Act provides that a district court shall make a _de novo_ determination of those portions of a Magistrate Judge's report or specific proposed findings or recommendations to which an objection is made. 28 U.S.C. § 636(b)(1)(C); _Camby v. Davis_, 718 F.2d 198, 199 (4th Cir. 1983).

Under the Social Security Act, a reviewing court must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard. _Craig v. Chater_, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." _Id._ (citations omitted). This court may not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. _Id._

The Social Security Administration, by regulation, has developed a five-step sequential evaluation process for assessing whether a claimant is disabled. The Commission determines whether the claimant (1) is engaged in substantial gainful activity; (2) has a severe physical or mental impairment; (3) has an impairment(s) that meets or equals one of the listings in appendix 1 of 20 C.F.R. part 404, subpart P; (4) has a residual functional capacity such that he or she can still perform past relevant work; and (5) has a residual functional capacity such

4

that he or she can make an adjustment to other work.  20 C.F.R. §
404.1520(a)(4).

## III.  Analysis

Before addressing Plaintiff's objections to the M&R, this
court will briefly outline the ALJ's decision denying disability
benefits.  The ALJ first found that Plaintiff met the insured
status requirements of the Social Security Act through March 31,
2004 and has not engaged in substantial gainful activity at any
time relevant to this decision.  (Tr. at 267.)  The ALJ next
found that the claimant has two severe impairments: Crohn's
disease and alcohol abuse.  (Id.)  At step three, the ALJ
determined that Plaintiff's impairments meet sections 12.04 and
12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 and that
Plaintiff is therefore under a disability.  (Id. at 267-68.)
Specifically, the ALJ found that "[w]ith the consideration of
alcohol, the claimant's depressive disorder met Listing 12.04"
and that "[c]onsidering the claimant's mental status with her
alcohol abuse, the requirements of Listing 12.09, using Listing
12.04 were met." (Id.)

Having found that Plaintiff is disabled, the ALJ then turned
to the determination of whether Plaintiff's alcohol abuse is a
contributing factor material to the determination of disability.[1]

_____

[1] The process used by the ALJ to determine whether the abuse
is a contributing factor material to the determination of
disability is discussed in greater detail infra Section IIIA.

5

The ALJ noted that even if Plaintiff stopped her substance use, she would continue to have a severe impairment; that is, Crohn's disease. (Id. at 268.) However, the ALJ determined that if Plaintiff stopped her substance use, she would not have an impairment that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and would still have the residual functional capacity to engage in light work. (Id.) Finally, the ALJ concluded that if she stopped her alcohol use, Plaintiff would be able to perform her past relevant work as a travel agency owner/manager. (Id. at 271.) Thus, the ALJ found that Plaintiff's alcohol use is a contributing factor material to the determination of disability and claimant is not disabled within the meaning of the Social Security Act.

The Magistrate Judge, in a thorough and well-researched report, recommended that the ALJ's finding of no disability be affirmed. Plaintiff now advances five specific objections to that report. These objections will be addressed in turn below.

### A. Alcohol as a Contributing Factor in Cobb's Disability

Plaintiff first objects to the Magistrate Judge allowing the ALJ to find that alcohol abuse was a contributing factor in Cobb's disability. "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the

6

individual is disabled." 42 U.S.C. § 423(d)(2)(C). The regulations implementing this statute advise that if a claimant is found to be disabled and there is medical evidence of alcoholism, the Commission must determine whether the alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(a).

The key factor to be considered in determining whether alcoholism is a contributing factor material to the disability is whether the claimant would be disabled if she stopped using alcohol. Id. § 404.1535(b)(1). To make this determination, the ALJ must first determine which physical and mental limitations would remain in the absence of drug addiction or alcoholism. Id. § 404.1535(b)(2). Second, the ALJ must determine if the remaining limitations would be disabling. If the remaining limitations would not be disabling, then the "drug addiction or alcoholism is a contributing factor material to the determination of disability." Id. § 404.1535(b)(2)(i).

In this case, the ALJ initially found that Plaintiff was under a disability in that her impairments met the criteria of a listed impairment — specifically, Listing 12.04 (Affective Disorders) and Listing 12.09 (Substance Addiction Disorders). The ALJ then went on to determine whether Plaintiff's alcoholism was a contributing factor material to her disability. The ALJ found that if Plaintiff stopped her substance use, she would

7

continue to have a severe impairment; that is, Crohn's disease.
(Tr. 268.) However, the ALJ next found that if Plaintiff stopped
her substance use, she would not have an impairment that meets or
medically equals an impairment listed in 20 C.F.R. Part 404,
Subpart P, Appendix 1. (Id.) The ALJ further found that if
Plaintiff stopped the substance use, she would have the residual
functional capacity to engage in light work and that she could
perform past relevant work as a travel agency owner/manager.
(Id. at 268-71.)

Plaintiff argues that when the ALJ found that alcohol abuse
was a contributing factor, he incorrectly did so as a layman when
in fact, materiality is a "medical issue." (Objections (Doc. 18)
18.) Plaintiff, however, cites to no authority specifically
supporting this proposition. To the contrary, the very language
of the regulation states that "we must determine whether your
drug addiction or alcoholism is a contributing factor material to
the determination of disability," 20 C.F.R. § 404.1535(a)
(emphasis added), where "[w]e or us refers to either the Social
Security Administration or the State agency making the disability
or blindness determination." Id. § 404.1502 (emphasis added).

This court recognizes that where substance abuse disorders
are combined with mental impairments, it is often difficult to
separate the two impairments from each other for purposes of
determining materiality. Evidence of how a claimant performed

8

during a period of sobriety — either from the claimant's existing medical records or developed by medical testimony — may be helpful to the ALJ in making such a determination.  See Emergency Teletype, Office of Disability, Social Security Administration, "Questions and Answers Concerning [Drug Abuse and Alcoholism] from July 1996 Teleconference," August 30, 1996, at No. 29 (hereinafter "Emergency Teletype").

In this case, the ALJ did consider medical evidence present in the record when making the materiality determination and did not improperly "play doctor" as Plaintiff alleges.  Specifically, it is clear that the ALJ examined the notes from Plaintiff's detoxification treatment at Hazelden.[2]  (Tr. 268, 346-48.)  Her treating counselor noted that "[t]esting was done by mental health clinic staff in the middle of her treatment.  The testing showed that the [cognitive] impairment had lifted."  (Id. at 347.)

Furthermore, the ALJ cited to a psychological examination conducted on September 3, 2004. (Tr. 268.)  In her notes from that examination, Dr. Pope concluded that Plaintiff's problems

---

[2] It appears that the ALJ may have miscited the exhibit from Hazelden in his decision.  The ALJ cites to Exhibit 23F, but an examination of that Exhibit reveals an annual preventative exam report from the Durham Women's Clinic and does not refer to any alcohol use.  (Tr. 353-55.)  Rather, Exhibit 22F is her treatment records from Hazelden and directly speak to her detoxification.  (Tr. 346-52.)  This seems to be the exhibit to which the ALJ refers.

are "mainly physical." (Id. at 326.) It is especially significant to note that Dr. Pope's comments were in response to the following prompt: "If you have concluded that the medical record indicates that the claimant's alcohol and/or substance use/abuse contributes to any limitations as set forth above, please identify and explain what changes you would make to your answers if the claimant was totally abstinent from alcohol and/or substance use/abuse." (Id. at 327 (emphasis added).) The fact that Dr. Pope even answered this question constitutes evidence that Dr. Pope believed that alcohol did in fact contribute to Plaintiff's impairments. Dr. Pope's answer further suggests that if Plaintiff's alcohol use was eliminated, her problems would be mainly physical (as opposed to mental or abuse-related). This report represents substantial evidence supporting the ALJ's finding that alcohol was a contributing factor material to her disability determination.

Plaintiff further contends that the ALJ was under a duty to obtain Dr. Stephenson's treatment notes. However, it appears to this court that the ALJ properly developed the record regarding the nature of Plaintiff's mental impairment. See Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) ("The ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record."). In particular, the ALJ stated that Dr. Stephenson's treatment notes

10

were subpoenaed, but "no treatment records were obtained; rather, the conclusory assessments were made available . . . ." (Tr. 269.) The Appeals Council remand order, issued on April 7, 2004, states: "If Dr. Stephenson's treating notes are not available or inconclusive, a psychological consultative examination is necessary." (Tr. 300.)

Although not clear from the record why such treatment notes were not available, it appears that the ALJ precisely followed the instructions of the Appeals Council by ordering a psychological consultative examination instead, which was performed by Dr. Pope in September 2004.[3] As discussed above,

---

[3] A detailed examination of the record further persuades this court that the ALJ properly fulfilled his duty to develop the record. The procedural history in this case shows that the remand order was entered by the district court, and the Appeals Council subsequently entered its remand order on April 7, 2004. When the case was called for a hearing on August 3, 2005, Plaintiff's counsel informed the ALJ that he had reviewed the exhibit file and indicated that the file was updated with the available medical records. (Tr. 360.) He was also informed at that time that ALJ Miller had already ordered a psychiatric consultative evaluation in September 2004. (Tr. 361-62.) At the December 13, 2005 hearing, counsel recognized that he was unable to obtain Dr. Stephenson's actual treatment notes, but also failed to request the ALJ to obtain them by subpoena or otherwise. (Tr. 367.) Nor did he object to the interpretation of the Appeals Council remand order, or make any further request for Dr. Stephenson's records. He simply indicated that he was prepared to proceed. On these facts, this court finds Plaintiff's argument that the ALJ was required to obtain Dr. Stephenson's notes unpersuasive. Furthermore, regardless of why the treatment records were not obtained, it appears the ALJ properly fulfilled his duty to develop the record regarding Plaintiff's mental impairments by ordering a psychiatric consultation with Dr. Pope.

11

ordering the consult in the absence of Dr. Stephenson's treatment notes fulfilled the ALJ's duty to develop the record regarding Plaintiff's mental impairments pursuant to the remand order issued by the Appeals Council. For these reasons, the court does not believe it is necessary to determine whether the ambiguous language of the consent order unequivocally required the ALJ to obtain Dr. Stephenson's treatment records. (Cf. M&R (Doc. 13) at 26-37 (concluding that the ALJ was only required to obtain Dr. Stephenson's notes if they were necessary to the ALJ's decision-making process).) This court can find no reason in the record to remand this case a second time to secure Dr. Stephenson's notes, if available, in view of the fact that the parties were content to proceed on remand without those notes, but instead with the opinion of Dr. Pope. See supra note 3.

### B. Vocational Expert Testimony

Plaintiff next claims that the Magistrate Judge should not have allowed the ALJ to disregard the testimony of vocational expert (hereinafter "VE") Kimberly Engler without discussion. At the most recent hearing, held on December 13, 2005, VE Engler testified that she was not aware of any jobs for a person who would have to leave the work station for anywhere from twelve to twenty times during the course of the day in order to use the bathroom. (Tr. 390.) At an earlier hearing held on January 3, 2003, VE Julie Sawyer-Little testified that she could not think

12

of a number of times a person would normally be allowed to go to the bathroom during a day. (Tr. 75.) She explained: "I think in clerical positions and positions like this one it would be at the discretion of the individual. I would say that the only time it would become problematic if it's to the extent where it's impacting the workload and they're not able to maintain a sufficient workload . . . ." (Id.)

Regarding this issue, this court fully adopts the analysis set forth by the Magistrate Judge in his report. (See M&R 5-10.) As noted by the Magistrate Judge, "it was for the ALJ to decide which testimony to accept." (Id. at 10.) For example, the ALJ could have found that the hypothetical question posed to VE Engler did not fairly state Plaintiff's limitations. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Specifically, Plaintiff's records and testimony show that twelve or more bowel movements a day was not necessarily typical and that she only experienced such frequent trips to the bathroom during a "flare-up" of her Crohn's disease. (See generally M&R 7-10 (describing Plaintiff's testimony and medical treatment for Crohn's disease).) Thus, although the ALJ acknowledged that Plaintiff

13

requires ready restroom access, he was not necessarily required

accept as a fact that she would have to take twelve to twenty

breaks daily, as was suggested in the hypothetical question posed

to VE Engler.  In sum, there is substantial evidence in the

record supporting the ALJ's decision to disregard the testimony

of VE Engler.

### C.    Allegations of Severe Pain

Plaintiff next objects to the ALJ's finding that Plaintiff

had not alleged severe pain, and his subsequent failure to assess

the pain under the framework set out in Craig v. Chater, 76 F.3d

585 (4th Cir. 1996).  Plaintiff alleges that the ALJ erred by

stating that "[s]evere pain has not been alleged by the claimant

. . . ." (Tr. 270.)  Plaintiff points to her statements that she

spends an average of about three days a month in bed because,

when she has a bowel obstruction, "all you can do is to lie there

and wait for the obstruction to pass or until the medicine

works." (Tr. 389.)  The Medical Source Statement from Dr.

Stephenson, dated February 5, 2002, states that Plaintiff

complained of "episodic severe abdominal pain." (Tr. 244.)

Based on the foregoing, this court agrees with Plaintiff that

severe pain was alleged, and that the record reflects her

complaints of severe pain.

Nevertheless, this court finds that the ALJ properly

assessed Plaintiff's allegations of disabling pain under Craig

and that no error was committed. The ALJ's comment to which Plaintiff objects reads in full: "Severe pain has not been alleged by the claimant; rather, the evidence does not show the claimant has associated sacroiliac joint pain or other joint and extremity pain as a result of her Crohn's disease." (Tr. 270 (emphasis added).) By using a semicolon and the phrase "rather," it seems that the ALJ was simply suggesting that Plaintiff has not alleged any severe joint or extremity pain, (see Tr. 270), particularly when the statement is viewed in context of the full opinion.

However, even assuming the ALJ meant that Plaintiff had not alleged severe pain at all, the ALJ nevertheless properly assessed Plaintiff's allegations of disabling pain under the Craig framework, and concluded that Plaintiff's flares of Crohn's do not make her unable to perform light work. Craig sets out a two-step analysis for evaluating subjective complaints of pain. First, the claimant must show by objective medical evidence a medical impairment reasonably likely to cause the actual pain, in the amount and degree, alleged by the claimant. Craig, 76 F.3d at 594. "At this stage of the inquiry, the pain claimed is not directly at issue; the focus is instead on establishing a determinable underlying impairment — a statutory requirement for entitlement to benefits, which could reasonably be expected to be the cause of the disabling pain asserted by the claimant." Id.

15

The second step is for the ALJ to evaluate the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work. Id. at 595.

In this case, the ALJ found that Plaintiff met her step one burden under Craig to show a medically determinable impairment — Crohn's disease — that could reasonably be expected to produce the pain and other symptoms alleged. (Tr. 270.) Plaintiff argues that the ALJ's step one finding is meaningless because "[a] genuine Step One finding in favor of a claimant means that the objective evidence shows that the claimant has a medical condition which could reasonably be expected to produce the pain alleged, to the degree alleged." (Objections (Doc. 18) 17 n.5 (emphasis in original).) But as stated above, the focus at this step is on finding the presence of an underlying impairment, not assessing the nature and intensity of Plaintiff's pain. Craig, 76 F.3d at 594. Thus, the only question for the ALJ at this stage was whether she had a medically determinable impairment that could reasonably produce the disabling symptoms that she has alleged, and the ALJ determined that Plaintiff successfully demonstrated such an impairment.

At step two of the Craig analysis, the ALJ found that the evidence did not support Plaintiff's allegation that she was unable to work due to flares of her Crohn's disease. (Id.) In other words, the ALJ found that the pain Plaintiff experienced

16

from her Crohn's disease — regardless of whether he labeled the pain as "severe" or not — was not disabling because it did not interfere with her ability to perform light work. Provided that this finding is supported by substantial evidence, it must be upheld.

This court finds that the ALJ's finding that Plaintiff did not suffer from disabling pain is supported by substantial evidence. _Craig_ counsels that the step two evaluation should take into account all available evidence of claimant's pain, such as medical history, evidence of reduced joint motion or deteriorating tissues, and evidence of claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it. _Craig_, 76 F.3d at 595. An examination of the record indicates that such evidence was present regarding these points and was considered by the ALJ. The ALJ notes that Plaintiff could perform numerous daily activities as well as walk on a treadmill for twenty minutes a day, four days a week. (Tr. 270.) He further notes that she does not have severe joint or extremity pain due to her Crohn's disease. (Tr. 270.) The record further indicates that Plaintiff was having less abdominal pain and formed, regular bowel movements when she was on Asacol tablets in 1999. (Tr. 193.) In 2001, her records show that she complained of intermittent flares and obstructions, but admitted that she was not taking her Asacol

17

to prevent the recurrence of Crohn's. (Tr. 192.) Such evidence is sufficient to support the ALJ's finding that Plaintiff's Crohn's disease and the symptoms associated with that disease, do not prevent her from performing light work.

### D. **Severity of Plaintiff's Depression**

Plaintiff objects to the ALJ's finding that her depression was not severe at step two of the disability analysis. She claims that in order to make that finding, the ALJ had to reject the opinion of Plaintiff's treating physician, Dr. Stephenson. (Objections (Doc. 18) 17.) In her initial brief in support of judgment on the pleadings, Plaintiff states that Dr. Stephenson's opinion shows that Plaintiff's depression alone would meet Listing 12.04.[4] (Pl.'s Br. (Doc. 10) 19.) Plaintiff asserts that, while not mentioned at step two, the ALJ's reason that Dr. Stephenson's opinion was "not given great weight" was because "the claimant's alcohol abuse was a contributing factor to the claimant's mental status." (Tr. 269.) Plaintiff also assigns error to the ALJ's rejection of Dr. Stephenson's opinion because

---

[4] As a preliminary matter, this court notes that whether an impairment meets or equals a listing is a question that is reserved to the Commissioner. 20 C.F.R. § 404.1527(e) ("Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart . . . the final responsibility for deciding these issues is reserved to the Commissioner.").

the ALJ found that the opinion "is not supported by treatment records" (Tr. 269), when Plaintiff claims that the ALJ failed to even enforce the subpoena.

"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). This court concludes that there is substantial evidence in the record supporting the ALJ's finding that Plaintiff's depression was not severe and fully affirms the decision of the Magistrate Judge regarding this issue. (See M&R (Doc. 13) 37-41.) Specifically, it is not evident that Dr. Stephenson ever treated Plaintiff while she was not abusing alcohol, and thus it was reasonable for the ALJ to grant limited weight to his opinion. As discussed by the Magistrate Judge, Plaintiff's records from Hazelden suggest that her mental state was stable absent alcohol abuse. Furthermore, the psychiatric consultation with Dr. Pope — which is also cited by the ALJ — states that Plaintiff's ability to understand, remember, and carry out instructions is not affected by her mental impairments, nor is her ability to respond appropriately to supervision, co-workers, and work pressures in a work setting. (Tr. 325-26.) Dr. Pope states that Plaintiff's Crohn's disease is the impairment that interferes with her capability to undertake uninterrupted work. (Tr. 326.)

19

Furthermore, the ALJ proceeded to find that the <u>combination</u> of Plaintiff's alcohol abuse and depression was severe when he found that the combination met Listing 12.04 and 12.09. (M&R (Doc. 13) 37.)  However, as discussed above and as thoroughly articulated by the Magistrate Judge, the ALJ then properly evaluated Plaintiff's depression separately from her alcohol abuse, and concluded that without her alcohol abuse, her depression alone would not meet Listing 12.04.  (M&R (Doc. 13) 39-41.)  <u>See also</u> <u>supra</u> Section IIIA (explaining how the ALJ properly determined whether the alcoholism is a contributing factor material to the determination of disability).  Finally, as was also discussed above, it appears that the ALJ properly developed the record regarding the nature of Plaintiff's mental impairment by ordering a psychiatric evaluation, performed by Dr. Pope in September, when Dr. Stephenson's treatment notes were not available.  <u>See</u> <u>supra</u> Section IIIA ("it appears that the ALJ followed the instructions of the Appeals Council by ordering a psychological consultative examination instead [when Dr. Stephenson's treatment notes were not available].").

In sum, this court adopts the analysis of the Magistrate Judge on this issue.  (<u>See</u> M&R (Doc. 13) 37-41.)  There is substantial evidence supporting the ALJ's finding that Plaintiff's depression was not a severe impairment.

20

## E.   Procedure Used for Determining Whether Alcohol was a Contributing Factor in Plaintiff's Disability

Lastly, Plaintiff argues that the ALJ may determine materiality "only after determining, via the 5-step sequential process, whether the claimant is disabled" and that the ALJ did not consider Plaintiff's depression at step two.  (Pl's Objections (Doc. 18) 20; Pl.'s Br. (Doc. 10) 20-21.)  For the reasons discussed at length above, this court does not agree.

As discussed above, <u>supra</u> Section IIID, there is substantial evidence to support the ALJ's step two finding that Plaintiff's depression was not a severe impairment.  The ALJ obviously considered Plaintiff's depression at step three, when he found that the combination of her depression and alcohol abuse met Listing 12.04 and 12.09, and therefore she is under a disability as defined in the Social Security Act.  (Tr. 268.)  Only after determining that Plaintiff was disabled did the ALJ move on to determine whether her alcohol use was material to this finding.  This is the process that is required by 20 C.F.R. § 404.1535(b)(2), and indeed restated in the case cited by Plaintiff, <u>Orr v. Barnhart</u>, 375 F. Supp. 2d 193, 200 (W.D.N.Y 2005).  This process was correctly followed by the ALJ in this case, and it is therefore inaccurate for Plaintiff to allege that the ALJ failed to "seriously subject[] Cobb's depression to the

21

five-step sequential evaluation . . . ." (Pl.'s Br. (Doc. 10) 20).

## IV. Conclusion

This court concludes that the result reached by the Magistrate Judge in his report (Doc. 13) should be adopted. For the reasons expressed by the Magistrate Judge and specifically adopted herein, and for the other reasons set forth herein, Plaintiff's Motion for Judgment on the Pleadings (Doc. 10) is DENIED, Defendant's Motion for Judgment on the Pleadings (Doc. 11) is GRANTED, the Commissioner's finding of no disability is AFFIRMED, and this action will be dismissed with prejudice. A Judgment dismissing this action will be entered contemporaneously with this Order.

This the 30th day of September, 2009.

_William L. Osteen, Jr._
United States District Judge